ROBERT J. REYNOLDS (CA Bar No. 151243)
LAW OFFICE OF ROBERT J. REYNOLDS
16950 Via de Santa Fe, Suite 5060-145
Rancho Santa Fe, CA 92091
(619) 261-3393
rjr@robertjreynolds.com

PHILIP A. SECHLER (VA Bar No. 99761)
MATHEW W. HOFFMANN (VA Bar No. 100102)
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4655
psechler@ADFlegal.org
mhoffmann@ADFlegal.org

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Holy Sexuality**, | Case No. **'25CV1289 CAB KSC** |
| Plaintiff, | |
| v. | **COMPLAINT** |
| **OpenAI, Inc.** and **We Are Percent Limited a/ka/ Goodstack a/k/a Percent**, | **DEMAND FOR JURY TRIAL** |
| Defendants. | |

1

## INTRODUCTION

1. Plaintiff Holy Sexuality is a Christian nonprofit based in Texas that uses video courses to teach young people and their families about biblical principles on human sexuality.

2. To operate more effectively, Holy Sexuality contacted Defendant OpenAI, Inc., a San Francisco-based tech company, to receive OpenAI's 20% nonprofit discount for a ChatGPT subscription.

3. OpenAI sent Holy Sexuality to Defendant Goodstack to verify Holy Sexuality's eligibility for the discount.

4. But OpenAI and Goodstack denied Holy Sexuality the discount because "religious … institutions are not eligible."

5. This categorical denial, OpenAI's published policy, and Goodstack's enforcement of that policy are invidious religious discrimination. And they are illegal under California's Unruh Civil Rights Act: all people in California "no matter what their … religion … are entitled to … full and equal" treatment from businesses. Cal. Civ. Code § 51(b).

6. People of faith aren't second-class citizens in California, and tech companies cannot provide lesser services to customers simply because they are religious.

7. This Court should thus grant judgment for Holy Sexuality, declare Defendants' discriminatory denial and published policy unlawful, enjoin that policy, order Defendants to remove their discriminatory advertisements, and award Holy Sexuality damages and attorney's fees.

## JURISDICTION, PARTIES, AND VENUE

8. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332.

2

9. Plaintiff Holy Sexuality is a 501(c)(3) religious nonprofit organization incorporated under the laws of the State of Texas with its principal place of business in Texas. It is a citizen of Texas.

10. Defendant OpenAI, Inc. is a Delaware nonprofit corporation with its principal place of business at 1455 3rd Street San Francisco, CA 94158. It is a citizen of Delaware and California.

11. Defendant We Are Percent Limited also known as Goodstack also known as Percent is a private limited company organized under the laws of England with its principal place of business at 7 Bell Yard, London, England, WC2A 2JR. It is a citizen of England (a foreign state).

12. Defendant Goodstack maintains an office with employees at Foundry Square III, 505 Howard Street San Francisco, California 94105.

13. Defendant Goodstack is subject to both general and specific personal jurisdiction of courts in California.

14. Defendant Goodstack maintains substantial, continuous, and systematic contacts with California, as shown by its office and employees in San Francisco.

15. Defendant Goodstack purposefully directed its relevant activities as described in this Complaint at California and purposefully availed itself of the privilege of conducting activities in California.

16. The amount in controversy, including current and future recoverable attorney's fees, exceeds $75,000.

17. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions described in this Complaint occurred in this district.

# FACTUAL ALLEGATIONS

## I. Holy Sexuality empowers families to celebrate biblical sexuality.

18. Dr. Christopher Yuan founded Holy Sexuality to provide resources for adults, teens, and children to understand, embrace, and celebrate biblical sexuality.

19. In his early life, Dr. Yuan was an agnostic who elevated his identity in his sexuality as a gay man above his true identity as a child of God.

20. Dr. Yuan left home to pursue dental school, became addicted to drugs, and then began dealing drugs to support his addiction. His attendance and grades plunged. Three months before graduation, his school expelled him.

21. Two years after his expulsion, twelve law enforcement agents raided his house for drugs. Instead of graduating and becoming a dentist, he went to federal prison for six years.

22. While in prison, he discovered a copy of the New Testament and began to read the Gospel of Mark, which planted the seed of his conversion.

23. A few days later, he was diagnosed with HIV. Devastated and lying in his cell, he discovered a note written on the top of his bunk bed. It said, "If you're feeling bored, read Jeremiah 29:11."

24. Jeremiah 29:11 says, "'For I know the plans I have for you,' declares the Lord, 'plans to prosper you and not to harm you, plans to give you hope and a future.'"

25. Dr. Yuan read the verse and found hope. He knew that regardless of what he had done in the past, God could still have a plan for him.

4

26. That began a gradual process of becoming a Christian and God setting him free from his drug addiction.

27. While still in prison, he applied to and began to attend a Bible college. After his release, he taught at the college for twelve years and became a pastor and accomplished speaker.

28. Over the past several years, Dr. Yuan has seen much confusion in the ongoing societal debate surrounding gender identity and sexual orientation. He recognized that these issues pose difficult questions for families, and he wanted to provide a home discipleship resource for families to use to understand the Bible's teaching on human sexuality.

29. In March 2023, Dr. Yuan founded Holy Sexuality to provide that needed education.

30. Holy Sexuality is a Christian ministry that lives out its faith by creating content to educate about biblical teachings.

31. Holy Sexuality offers a twelve-lesson video curriculum designed for parents to watch with their teenagers. Dr. Yuan serves as the instructor for the videos, which discuss biblical teachings on sexuality. Those teachings include God's design for marriage as a lifelong union between one man and one woman. They also include that God immutably creates each person as male or female; these two distinct, complementary sexes reflect the image of God; and rejection of one's biological sex is a rejection of being made in the image of God.

32. Holy Sexuality believes that its videos will help promote true happiness and flourishing for young people.

33. Holy Sexuality designed its videos for a Christian audience, but anyone can purchase the curriculum online at HolySexuality.com for $20.

34. Dr. Yuan is Holy Sexuality's executive director and only employee.

35. Dr. Yuan does not receive a salary from Holy Sexuality.

36. Dr. Yuan resides in San Diego County and performs work for Holy Sexuality from San Diego County.

## II. OpenAI and Goodstack discriminate against religious nonprofits.

37. OpenAI is an artificial intelligence (AI) research and deployment company.

38. OpenAI claims its "mission is to ensure that artificial general intelligence benefits all of humanity." OpenAI, *About*, https://openai.com/about/ (last accessed May 19, 2025).

39. It recently raised $40 billion in funding at a $300 billion valuation. OpenAI, *New funding to build towards AGI* (Mar. 31, 2025), https://openai.com/index/march-funding-updates/.

40. It created and maintains the wildly popular ChatGPT AI tool.

41. ChatGPT interacts with users in a conversational way to answer users' questions. It is available at OpenAI's website and as a mobile app.

42. ChatGPT can generate meeting summaries from notes, write computer code, search the internet for answers to complex questions, draft emails, and create images.

43. OpenAI estimates 500 million people use ChatGPT every week. *New funding to build towards AGI, supra.*

44. OpenAI offers a free version of ChatGPT and more powerful versions for a fee.

45. It sells subscriptions to "ChatGPT Team" for companies for $25 per user per month billed annually (or $30 per user per month billed monthly).

46. ChatGPT Team offers organizations everything in the free version of ChatGPT along with extended limits on messaging, file uploads, data analysis, and image generation and integration with a group's Google Drive.

47. OpenAI offers nonprofits a 20% discount on ChatGPT Team (for a cost of $20 per month per user for the annual plan or $24 per month per user for the monthly plan). Ex. A at 1.

48. OpenAI makes the discount "available to eligible nonprofits based anywhere in the world." *Id.* at 2.

49. But under OpenAI's policy (referred to by this Complaint as OpenAI's *Religious Discrimination Policy*) "academic, medical, religious, or governmental institutions are not eligible for OpenAI for Nonprofits." *Id.*

50. Nonprofits apply for the discount by clicking a link on OpenAI's website. *Id.* at 1–2.

51. Clicking on that link takes users to Defendant Goodstack's website. *See* Ex. B.

52. OpenAI's website notes that it "partners with Goodstack to validate nonprofit eligibility criteria." Ex. A at 2.

53. At all relevant times, Defendant Goodstack partnered, continues to partner, and had and has an agreement with Defendant OpenAI, an entity with its principal place of business in California, to enforce OpenAI's *Religious Discrimination Policy* to nonprofits operating in California and worldwide.

7

54. The application for the discount asks for the organization's name, where it is registered, and the identity of a contact person.

55. The application also asks about the nonprofit's plan to use ChatGPT.

### III. Defendants deny a discount to Holy Sexuality because it is "religious."

56. Holy Sexuality wanted to purchase ChatGPT Team to help it translate its religious programming into other languages, such as Chinese and Spanish; to reach a larger audience; to interpret website traffic and user engagement patterns to improve engagement and outreach; and for other valuable uses.

57. At or around 2:45 pm on February 25, 2025, Dr. Yuan, on behalf of Holy Sexuality, applied for OpenAI's nonprofit discount from San Diego County by clicking on the link on OpenAI's website that led to Goodstack's website.

58. He completed the form on Goodstack's website.

59. Shortly after applying, Dr. Yuan received an email from Goodstack saying that it was "working with OpenAI to process your application for their program" and asking Dr. Yuan to verify his email address. Ex. C at 8.

60. Dr. Yuan verified his email address.

61. On March 17, 2025, OpenAI denied Holy Sexuality's discount request under its *Religious Discrimination Policy*. Ex. D at 9.

62. Dr. Yuan received the denial email from OpenAI while in San Diego County.

63. The email informed Dr. Yuan that OpenAI "partnered with Percent to validate nonprofit eligibility criteria." *Id.*

64. OpenAI and Goodstack weren't "able to verify [Holy Sexuality's] eligibility for this nonprofit offer." *Id.*

65. OpenAI and Goodstack said that "academic, medical, religious, or governmental institutions are not eligible at this time." *Id.*

66. Holy Sexuality met all other requirements for OpenAI's nonprofit discount.

67. Holy Sexuality is not an academic, medical, or governmental institution. That is clear from easily and publicly available information, including Holy Sexuality's website.

68. OpenAI directed Holy Sexuality to "contact Percent" if it had "further questions" about the "application." *Id.*

### IV. Defendants' discriminatory denial has injured and continues to injure Holy Sexuality.

69. Defendants' denial means that to access ChatGPT Team, Holy Sexuality must pay $25 per user per month instead of $20 per user per month.

70. Holy Sexuality expects it would have used ChatGPT Team for at least 6 users for at least 10 years.

71. Under the Unruh Act, Holy Sexuality is entitled to treble damages. Cal. Civ. Code § 52(a).

72. Defendants engaged in intentional, malicious, and outrageous religious discrimination against Holy Sexuality pursuant to OpenAI's facially discriminatory *Religious Discrimination Policy*.

73. OpenAI's *Religious Discrimination Policy* remains in effect.

74. Goodstack continues to enforce OpenAI's *Religious Discrimination Policy* by determining that religious nonprofits are ineligible for OpenAI's nonprofit discount.

75. OpenAI's website is publicly advertising its *Religious Discrimination Policy*.

76. Anyone with an internet connection can access OpenAI's website and view its *Religious Discrimination Policy*.

77. At all times relevant, OpenAI and Goodstack had and have an agreement that Goodstack will enforce OpenAI's *Religious Nondiscrimination Policy*.

78. Upon information and belief, OpenAI's *Religious Discrimination Policy* and Goodstack's enforcement of that policy are causing ongoing harm to otherwise qualifying religious nonprofits that desire to apply for the nonprofit discount.

79. Upon information and belief, OpenAI's *Religious Discrimination Policy* and Goodstack's enforcement of that policy are currently deterring otherwise qualifying religious nonprofits from applying for the nonprofit discount.

80. Holy Sexuality would immediately apply again for OpenAI's nonprofit discount but for OpenAI's *Religious Discrimination Policy* and Goodstack's enforcement of that Policy.

81. Holy Sexuality continues to meet all other requirements to receive OpenAI's nonprofit discount.

## CLAIM
### Count One
### Violation of the Unruh Act (Cal. Civ. Code § 51).

82. Plaintiff repeats and realleges each of the allegations contained in paragraphs 1–81 of this Complaint.

83. California's Unruh Civil Rights Act guarantees that "[a]ll persons within the jurisdiction of" California "no matter what their … religion … are entitled to the full and equal accommodations, advantages,

facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51(b).

84. The Act creates and preserves a nondiscriminatory environment in California businesses by banishing and eradicating arbitrary, invidious discrimination.

85. The Act stands as a bulwark protecting each person's inherent right to full and equal access to all businesses.

86. The Unruh Act defines "[r]eligion" to "include[ ] all aspects of religious belief, observance, and practice." Cal. Civ. Code § 51(e)(5).

87. "Whoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to" the Unruh Act "is liable for each and every offense." Cal. Civ. Code § 52(a).

88. OpenAI qualifies as a "business establishment[ ]" under the Unruh Act.

89. By categorically denying a discount to a "religious" nonprofit but granting the same to other nonprofits, OpenAI and Goodstack denied Holy Sexuality "the full and equal" benefit of OpenAI's product.

90. Holy Sexuality's religion was at least a substantial reason for OpenAI and Goodstack's denial of the nonprofit discount.

91. OpenAI's publication and Goodstack's enforcement of the *Religious Discrimination Policy* also independently violate the Unruh Act.

92. OpenAI's *Religious Discrimination Policy* denies "religious" nonprofits the "full and equal" benefit of its products.

93. Goodstack's enforcement of that policy denies "religious" nonprofits the "full and equal" benefit of OpenAI's products.

94. OpenAI and Goodstack's religious discrimination was and remains unreasonable.

95. OpenAI and Goodstack's religious discrimination was and remains arbitrary.

96. OpenAI and Goodstack's denial of Holy Sexuality's discount request had no legitimate business interest.

97. OpenAI's *Religious Discrimination Policy* and Goodstack's enforcement of that policy has no legitimate business interest.

98. Goodstack aided and abetted OpenAI's denial of "the full and equal" benefit of its product to Holy Sexuality and aided and abetted OpenAI's enforcement of its *Religious Discrimination Policy*.

99. Goodstack "partnered" with OpenAI to determine that Holy Sexuality was ineligible for OpenAI's nonprofit discount because it is a "religious" group.

100. Goodstack also "partnered" with OpenAI to enforce its *Religious Discrimination Policy*.

101. Goodstack thus knowingly gave substantial assistance and encouragement to OpenAI in its violations of the Unruh Act.

102. Goodstack and OpenAI conspired to deny Holy Sexuality "the full and equal" benefit of OpenAI's product and conspired to enforce OpenAI's *Religious Discrimination Policy*.

103. Goodstack and OpenAI had and have an agreement that Goodstack would enforce OpenAI's *Religious Discrimination Policy* to prevent religious nonprofits from receiving OpenAI's nonprofit discount.

104. Pursuant to that agreement, Goodstack and OpenAI denied Holy Sexuality the nonprofit discount.

105. OpenAI and Goodstack are joint tortfeasors that are jointly and severally liable for denying Holy Sexuality the nonprofit discount and for maintaining and enforcing OpenAI's *Religious Discrimination Policy*.

106. Holy Sexuality is thus entitled to general and special damages, treble damages, a permanent injunction, declaratory relief, and attorney's fees under the Unruh Act. *See* Cal. Civ. Code § 52.

## **PRAYER FOR RELIEF**

Plaintiff Holy Sexuality respectfully requests that this Court enter judgment against Defendants and provide Plaintiff with the following relief:

(A) A declaratory judgment that:
  i. Defendants violated the Unruh Act by denying Plaintiff the nonprofit discount;
  ii. Defendant OpenAI's *Religious Discrimination Policy* violates the Unruh Act;
  iii. Defendant OpenAI's publication of its *Religious Discrimination Policy* violates the Unruh Act; and
  iv. Defendant Goodstack's enforcement of and agreement to enforce OpenAI's *Religious Discrimination Policy* violate the Unruh Act.

(B) A permanent injunction prohibiting Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing, publishing, or advertising OpenAI's *Religious Discrimination Policy* or any materially similar policy;

(C) General and special damages;

(D) Plaintiff's reasonable attorney's fees, costs, and disbursements; and

(E) All other further relief to which Plaintiff may be entitled.

Respectfully submitted this 21st day of May 2025.

By: *s/ Robert J. Reynolds*

| | |
|---|---|
| ROBERT J. REYNOLDS | PHILIP A. SECHLER |
| CA Bar No. 151243 | VA Bar No. 99761* |
| rjr@robertjreynolds.com | psechler@ADFlegal.org |
| LAW OFFICE OF ROBERT J. REYNOLDS | MATHEW W. HOFFMANN |
| | VA Bar No. 100102* |
| 16950 Via de Santa Fe | mhoffmann@ADFlegal.org |
| Suite 5060-145 | ALLIANCE DEFENDING FREEDOM |
| Rancho Santa Fe, CA 92091 | 44180 Riverside Parkway |
| (619) 261-3393 | Lansdowne, VA 20176 |
| (815) 642-9527 Fax | (571) 707-4655 |
| | (571) 707-4656 Fax |

*Pro Hac Vice application filed simultaneously*

*Attorneys for Plaintiff*

14

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands trial by jury of all matters so triable herein.

By: *s/ Robert J. Reynolds*
ROBERT J. REYNOLDS
rjr@robertjreynolds.com
*Attorney for Plaintiff*